IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION


BILLIE LYNN HILLIARD                                                                    PLAINTIFF

              v.                        Civil No. 14-2194

CAROLYN W. COLVIN, Commissioner
Social Security Administration                                                         DEFENDANT


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Billie Hilliard, brings this action under 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

**I.      Procedural Background:**

Plaintiff filed her application for DIB and SSI on October 11, 2011, alleging an onset date of August 1, 2011, due to fibromyalgia, obesity, a history of Wolff-Parkinson-White ("WPW") syndrome[1], pyelonephritis[2], major depressive disorder/adjustment disorder, and generalized

---

[1] WPW is a congenital cardiac abnormality in which an extra electrical pathway exists between the upper chambers of the heart, resulting in a rapid heartbeat (tachycardia).  Mayo Foundation for Medical Education and Research, *Wolff-Parkinson-White (WPW) syndrome*, http://www.mayoclinic.org/diseases-conditions/wolff-parkinson-white/basics/definition/con-20043508 (last accessed April 8, 2015).  Treatment consists of measures designed to stop or prevent episodes of fast heartbeats.  *Id.*  Although tachycardia is typically not life threatening, prolonged episodes can result in serious heart complications.  *Id.*

[2] Pyelonephritis is a urinary tract infection involving the urethra or bladder and kidneys.  Mayo Foundation for Medical Education and Research, *Pyelonephritis*, http://www.mayoclinic.org/diseases-conditions/kidney-infection/basics/definition/con-20032448 (last accessed April 9, 2015).

anxiety disorder.  Tr. 132-137, 138-143.  The Commissioner denied her applications initially and on reconsideration.  Tr. 69-72.  At the Plaintiff's request, an Administrative Law Judge ("ALJ") held an administrative hearing on October 2, 2012.  Tr. 35-70.  Plaintiff was present and represented by counsel.

At the time of the hearing, Plaintiff was 38 years old with a high school education and the completion of some college courses.  Tr. 16, 20, 36-37.  She had past relevant work ("PRW") experience as a customer service clerk, assistant grocery store manager, case manager, receptionist, and a private firm probation officer.[3]  Tr. 60-62.

On May 31, 2013, the ALJ concluded that the Plaintiff's fibromyalgia, obesity, history of WPW syndrome, major depressive disorder/adjustment disorder, and generalized anxiety disorder were severe, but concluded they did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 13-16.  He concluded that the Plaintiff could perform a range of light work.  Tr. 16.  The ALJ also determined that the Plaintiff could perform work where the interpersonal contact is incidental to the work performed, the complexity of the tasks is learned and performed by rote with few variables and little use of judgment, and the supervision required is simple, direct, and concrete.  Tr. 16.  With the assistance of a vocational expert, the ALJ found the Plaintiff could perform work as a food prep worker/cook helper and maid or housekeeper/cleaner.  Tr. 21.

The Appeals Council denied the Plaintiff's request for review on July 23, 2014.  Tr. 1-4. Subsequently, Plaintiff filed this action.  ECF No. 1.  This matter is before the undersigned for report and recommendation.  Both parties have filed appeal briefs, and the case is now ready for decision.   ECF Nos. 8, 9.

---

[3] Plaintiff testified that she worked as a probation officer for a private firm that was under contract with the "counties."  Tr. 62.

II.    **Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the decision of the ALJ. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A Plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience.  *See* 20 C.F.R. § § 404.1520(a)- (f)(2003).  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity.  *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

## III.   <u>Discussion</u>:

Plaintiff raises the following issues on appeal:  1) The ALJ failed to consider her subjective complaints; 2) The ALJ did not properly develop the record; 3) The ALJ failed to consider evidence detracting from his findings; 4) The ALJ assigned improper weight to the opinions of both treating and non-examining physicians; 5) The ALJ determined an improper RFC; and, 6) The ALJ failed to satisfy his burden of proof at step 5 of the sequential evaluation.

### A.    <u>Subjective Complaints</u>:

In her first argument, Plaintiff contends that the ALJ failed to consider her subjective complaints and to conduct a proper *Polaski* analysis.  We disagree. As the Eighth Circuit has observed, "Our touchstone is that [a Plaintiff's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).  In discrediting one's subjective complaints, however, an ALJ is required to consider all available evidence on the record as a whole and is required to make an express credibility determination.  *Lowe v. Apfel,* 226 F.3d 969, 971

(8th Cir. 2000).  Because of the difficulty evaluating medical symptoms such as pain and suffering, the Social Security Administration and this court have established guidelines for evaluating a claimant's subjective complaints.  Factors to be considered include the claimant's daily activities; the duration, frequency, and intensity of the pain; precipitating and aggravating factors; dosage, effectiveness, and side effects of medication; and functional restrictions.  *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984); 20 C.F.R. § 404.1529(c)(3) (2003).  Additional factors include treatments, other than medication, that the claimant has used to relieve pain or other symptoms, and any other measures that the claimant has used to relieve pain and other symptoms.  20 C.F.R. § 404.1529(c)(3)(v-vi) (2003).  Furthermore, "[t]he ALJ may discount subjective complaints of physical and mental health problems that are inconsistent with medical reports, daily activities, and other such evidence."  *Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997).

Contrary to the Plaintiff's contention, the ALJ is not required to "discuss each *Polaski* factor in a methodical fashion."  *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir.1996) (citing *Benskin v. Bowen*, 830 F.2d 878, 883 (8th Cir.1987)).  We will uphold the ALJ's analysis as long as the ALJ acknowledged and considered these factors prior to discounting the Plaintiff's subjective complaints of pain.  *Id*.

The Plaintiff alleges that the ALJ discounted her subjective complaints based upon inconsistencies in the record, but failed to point out any such inconsistencies.  However, our review of the record reveals that the ALJ depreciated the Plaintiff's subjective complaints for the following reasons:  1) the conservative nature of the treatment received; 2) the responsiveness of her headaches, fibromyalgia pain, pyelonephritis, and depression to treatment; 3) the absence of objective evidence to document limitations in range of motion, strength, sensation, or gait; 4) an essentially unremarkable cardiology work-up conducted in early 2012; 5) the Plaintiff's failure to

5

seek out consistent treatment for her mental impairments; 6) the Plaintiff's medical non-compliance; and, 7) the Plaintiff's reported daily activities.  Although doctors did treat the Plaintiff for chronic pain associated with fibromyalgia, hypertension, a history of WPW syndrome, headaches, pyelonephritis, major depressive disorder/ adjustment disorder, and generalized anxiety disorder, the ALJ properly noted that this treatment primarily consisted of conservative measures.  Doctors prescribed a combination of medication, home exercises, and therapy.  *See Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993) (holding that treating physician's conservative treatment was inconsistent with plaintiff's allegations of disabling pain).  There are no records to suggest that the Plaintiff's condition warranted surgical intervention or extensive hospitalization.  Moreover, although doctors did initially prescribe narcotic pain medications, her treating doctor discouraged long-term use of these medications to treat her fibromyalgia.

We do note that the Plaintiff's pyelonephritis warranted hospitalization on at least three occasions in 2012, but her condition ultimately responded to antibiotic therapy and no further treatment was necessary.  Tr. 289-295, 338-344, 344-348.  *Patrick v. Barnhart*, 323 F.3d 592, 596 (8th Cir. 2003) (holding if an impairment can be controlled by treatment or medication, it cannot be considered disabling).  It also appears that her headaches subsided following her last hospitalization for pyelonephritis.  Tr. 265, 272, 289-295, 332-334, 390-397, 400-405, 442-454.  Aside from one complaint of mild, occasional headaches in October 2012, the record is void of further evidence documenting headaches.  Moreover, the records on topic do not show that the Plaintiff reported headaches of the severity and duration she now alleges to her doctors.

We also note that doctors prescribed Cymbalta to treat her fibromyalgia symptoms.[4] Although the Plaintiff did report pain, stiffness/soreness, and muscle spasms associated with her fibromyalgia flare-ups, repeated physical exams showed no consistent functional limitations.  Tr. 258-260, 272, 378-387, 413-414, 481-482.  *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider).  The overall record also indicated that the Plaintiff's impairments were responsive to medication.  Tr. 258, 262-263, 317, 377, 384-387.  *See Patrick*, 323 F.3d at 596 (holding if an impairment can be controlled by treatment or medication, it cannot be considered disabling).  Instances of increased pain were generally associated with the discontinuation of or the Plaintiff's failure to take her medication.  Tr. 259, 378-383 413-414, 459, 465, 471-475, 477, 479, 483-486.  *See Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007) (a failure to follow a recommended course of treatment weighs against credibility).

Although the doctors had prescribed high dosages of Cymbalta to treat her fibromyalgia, this medication was not effective in treating her depression/anxiety.  Therefore, Dr. Leader added Abilify in 2013.  Tr. 471-475.  Records indicate that she tolerated this medication well.  However, prior to this time, records also reveal she did not follow-up with her mental health treatment providers as directed.  Tr. 465-470.  *See id.*;  *Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (failure of claimant to maintain a consistent treatment pattern for alleged mental impairments is inconsistent with the disabling nature of such impairments).  In addition, it was only after being threatened with a discontinuation of services that the Plaintiff reported her inconsistency was due

---

[4] In 2012, psychiatrist, Dr. Mervin Leader, discontinued the Cymbalta because it did not help Plaintiff's depression.  Tr. 416-422.  He prescribed Doxepin.  However, her fibromyalgia symptoms worsened and she resumed the Cymbalta.  Tr. 459, 465, 483-484.

to transportation issues.[5]   We also note that the Plaintiff's presentation for treatment often coincided with situational issues[6] that appeared to exacerbate her depression and anxiety.  *See Banks v. Massanari*, 258 F.3d 820, 826 (8th Cir. 2001) (finding depression not severe under similar circumstances).  This suggests that the Plaintiff's mental impairments were not as severe as alleged.  Otherwise, she would have followed the recommendations of her mental health providers.

Additionally, while we are cognizant of the Plaintiff's history of WPW, a cardiac work-up in 2012 was essentially unremarkable.   Her EKG demonstrated normal sinus rhythm, an echocardiogram revealed only trace mitral and regurgitation with an ejection fraction of 60%, and a 14-day even monitor showed only tachycardia.  Tr. 400-405, 408-410.  Further, aside from reported palpitations, Plaintiff's treatment notes document no heart related complaints.

The Plaintiff's reported daily activities also call into question her subjective complaints. On a function report, she reported the ability to care for her personal hygiene, get her kids ready for school, prepare simple meals, do the laundry, do the dishes, wipe down counters, dust, drive, ride in a car, shop in stores for groceries and basic supplies, pay bills, count change, handle a savings account, use a checkbook/money orders, watch television, visit friends monthly, and talk on the phone and text on a daily basis.  Tr. 215-223.  The evidence also reveals that the Plaintiff cared for her blind and developmentally delayed son.  Tr. 435-441.  *See Pena v. Chater*, 76 F.3d

---

[5] Although the Plaintiff appears to suggest that her failure to comply with treatment is related to her financial hardship, we can find no evidence to support this assertion.  The Plaintiff reported no difficulties attending other medical appointments, and was never refused treatment or medication based on her alleged inability to pay.  *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (holding that the ALJ correctly discounted the plaintiff's subjective complaints when there was no evidence that the plaintiff was ever denied medical treatment due to financial reasons). Accordingly, to the extent she is arguing that her inconsistent treatment should be excused by her financial situation; her argument is without merit.

[6] Plaintiff initially sought out treatment because her ex-husband had molested her daughter.  She had a hard time processing this because she, herself, had been molested as a child.   And, we do find this to give rise to a legitimate need for mental health services.  However, when she returned for her next therapy session, six months later, Plaintiff reported recent break-ups with boyfriends that had negatively affected her self-esteem.  Tr. 465-470.  Then, in July 2013, she reported that caring for her disabled son at night and alleged transportation difficulties had hampered her ability to follow through with her therapy.  Tr. 459-464.

906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor).  These reported activities are much more consistent with the ALJ's RFC assessment than with the Plaintiff's allegations of disability.

Accordingly, the undersigned finds that the ALJ properly considered the Plaintiff's subjective complaints, discrediting the accusations that were not supported by the overall record.

### B. **Develop the Record:**

The Plaintiff next argues that the ALJ failed to develop the record in this case. Specifically, she claims that the ALJ's failure to obtain an RFC assessment from a treating doctor and failure to clarify Dr. Shry's opinion constitutes reversible error.  It is certainly true that the ALJ owes a duty to a claimant to develop the record fully and fairly to ensure his decision is an informed decision based on sufficient facts. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).  In determining whether an ALJ has fully and fairly developed the record, the proper inquiry is whether the record contained sufficient evidence for the ALJ to make an informed decision. *See Haley v. Massanari*, 258 F.3d 742, 748 (8th Cir. 2001).  However, the ALJ is only required to develop a reasonably complete record. *See Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994). Moreover, contrary to Plaintiff's allegation, the ALJ properly developed the record in this case.

To begin, we note that the record does contain an RFC assessment from a "treating" source. Dr. Jacky Dunn completed an RFC assessment in October 2012, after treating the Plaintiff on only one occasion. Tr. 433. Essentially documenting the Plaintiff's medical history, Dr. Dunn's October 2012 treatment note provides no insight into the Plaintiff's physical condition. And, his extremely restrictive assessment is neither supported by his own physical examination nor the examinations conducted by the other examining physicians of record. In fact, records from Dr. Dunn dated after his assessment also fail to support his assessment. Instead of documenting physical findings, the doctor merely placed a line through each category, writing the word unchanged.

The only other physical RFC assessment was completed by a non-examining physician in 2011, documenting the Plaintiff's ability to perform light work. Although the assessment of a physician who has never examined the Plaintiff is generally not considered substantial evidence of the Plaintiff's ability to perform work-related activities, the undersigned finds that the overall medical record supports this assessment. *See Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (the medical evidence, State agency physician opinions, and claimant's own testimony were sufficient to assess residual functional capacity); *Stormo v. Barnhart*, 377 F.3d 801, 807-08 (8th Cir. 2004) (medical evidence, State agency physicians' assessments, and claimant's reported activities of daily living supported residual functional capacity assessment).

As for the Plaintiff's mental RFC, the record contains only one RFC assessment. Dr. Steven Shry performed a mental evaluation of the Plaintiff in January 2013 and completed a mental RFC assessment. Tr. 435-441. After only one examination, Dr. Shry diagnosed the Plaintiff with adjustment disorder and assessed her with a global assessment of functioning score of 55. He found that the Plaintiff would have moderate limitations in the following areas: 1) interacting

appropriately with coworkers, 2) responding appropriately to work pressures in a usual work setting, and 3) responding appropriately to changes in a routine work setting based on her adjustment disorder.  Due to her adjustment disorder, he also opined that she would have moderate to severe limitations with extreme environmental stressors.  She was not, however, significantly impaired in her ability to communicate, interact in a socially appropriate manner, comprehend and carry out simple and complex tasks, cope with the typical demands of basic work-like tasks, attend and sustain concentration on tasks, or complete work-like tasks within an acceptable time frame.

The remaining evidence of mental health treatment consists of records from Perspectives Behavioral Health Management.  Tr. 416-426, 459-470, 471-475.  On October 18, 2012, the Plaintiff underwent an initial assessment, during which she was diagnosed with major depressive disorder without psychosis, generalized anxiety disorder, and sexual abuse of a child.  She was also assessed with a GAF of 43.  Rosemary Burns, a counselor at Perspectives, recommended weekly individual therapy and monthly medication management.  The Plaintiff returned for medication management with Dr. Mervin Leader on October 25, 2012.  Tr. 416-422.  She reported that her problems with depression had begun a few years earlier, when she learned that her ex-husband had molested her daughter.  Although her daughter had reportedly moved past the abuse, the Plaintiff could not.  However, in spite of reporting fatigue and muscle spasms related to her fibromyalgia, she denied muscle weakness, joint pain, or motion limitations.  Dr. Leader noted intact judgment and insight.  He advised weaning her off the Cymbalta and prescribed Doxepin.  Plaintiff did not return for treatment until January 2013, at which time she told Dr. Leader that she had stopped the Doxepin due to a return of her fibromyalgia symptoms.  Tr. 476-480.  *See Wagner*, 499 F.3d at 851 (a failure to follow a recommended course of treatment weighs against credibility).

Plaintiff had resumed the Cymbalta with improvement.  Dr. Leader noted a depressed mood, normal affect, and limited insight and judgment.  He assessed her with a GAF between 43 and 45.

It was not until April 2013, that the Plaintiff returned to Ms. Burns for therapy.  Tr. 465-470.  Ms. Burns noted that she was not attending therapy regularly.  Recent break-ups with boyfriends and a move back to her old apartment had reportedly negatively affected her self-esteem.  The Plaintiff also reported fibromyalgia pain.  However, she did not return for therapy until late June 2013, at which time Ms. Burns advised her she was in danger of being discharged from service.  Tr. 459-464.  At this time, the Plaintiff reported transportation difficulties, having only one vehicle for both she and her daughter to share.  She also alleged that caring for her disabled son at night prevented her from following through with the homework Ms. Burns prescribed.  The Plaintiff also reported increased fibromyalgia pain.  Ms. Burns assessed her with a GAF of 43.  However, Ms. Burns also noted that her noncompliance with therapy prevented her from providing an accurate statement concerning her progress.

In July 2013, Plaintiff presented for her final appointment with Dr. Leader.  Tr. 471-475.  He noted it had been at least six months since her last medication management appointment.  At this time, she indicated that her fibromyalgia had responded well to the resumption of Cymbalta.  Moreover, she was tolerating the recent addition of Ability well.  Dr. Leader assessed her with a GAF of 45.

It is the opinion of the undersigned that the Plaintiff's failure to seek out consistent mental health treatment and decision to discontinue the Doxepin and restart the Cymbalta against medical advice weigh against her subjective complaints of disabling depression/adjustment disorder and anxiety.  Dr. Shry found only moderate limitations, noting problems with frustration related to her adjustment disorder.  He assessed her with a GAF of 55, which is indicative of only moderate

12

symptomology.  *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV-TR 34 (4th ed. 2000).  Dr. Leader and Ms. Burns assessed GAF's between 43 and 45, indicating serious impairment.  *Id.*  However, it appears that the Plaintiff did not present for treatment as advised, and when she did, she reported situational issues that exacerbated her depression.

Further, we note that a GAF score is not essential to the residual functional capacity assessment.  *See Jones v. Astrue*, 619 F. 963, 973 (8th Cir. 2010) (Commissioner declined to endorse the GAF scales to evaluate Social Security claims because the scales do not have a direct correlation to the severity requirements in mental disorder listings); *Howard v. Commissioner of Social Security*, 276 F.3d 235, 241 (6th Cir. 2002) (GAF score is not essential to residual functional capacity accuracy).  The GAF scale does not have a direct correlation to the severity requirements in the mental disorder listings. Fed. Reg. 50746-765 (Aug. 21, 2000).  Thus, although GAF scores can be relevant, they can also be discounted when the overall medical record does not support them.  *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006).  Accordingly, reviewing the Plaintiff's medical records and reported daily activities in conjunction with the RFC assessments of record, we find that the evidence of record provided a sufficient basis for the ALJ's opinion.  And, we cannot say that the ALJ's failure to request additional RFC assessments or recontact Dr. Shry constitutes reversible error.

### C. **Evidence Detracting from Findings**:

Next, the Plaintiff argues that the ALJ failed to consider all of the evidence that detracted from his findings.  Our review of the record reveals that he did so.  Thus, we find the Plaintiff's argument to be without merit.

The Plaintiff's contention that the ALJ failed to consider her medication side effects has no basis in the record, as there is no evidence that the Plaintiff reported side effects to her doctors.

The record does include some reports of fatigue associated with her fibromyalgia, and the ALJ accounted for this in his RFC determination.  Similarly, he discussed and weighed the Plaintiff's obesity.  He also properly acknowledged the Plaintiff's alleged migraine headaches and the absence of supporting medical documentation.

Although the Plaintiff contends that the ALJ did not properly investigate her need for a sit/stand option, the undersigned does not find substantial evidence to support this limitation. Aside from tenderness, the record reveals no long-term range of motion limitations or documented gait or postural problems.  In fact, there are no records to indicate the Plaintiff reported similar problems to her doctors.  Further, her doctors repeatedly prescribed range of motion exercises, water aerobics, stretching exercises, and low impact incremental aerobic exercises.

### D.  <u>Treating and Non-examining Source Weight</u>:

Next, the Plaintiff disputes the ALJ's failure to grant controlling weight to the opinions of Drs. Dunn and Shry.  Under the social security regulations, the Commissioner will generally give a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s)" "controlling weight" when it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 416.927(d)(2)3; *see also Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005).  Yet such weight is neither inherent, nor automatic and does not "obviate the need to evaluate the record as whole."  *See Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006); *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001).   The commissioner "'may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir.

14

2012) (quoting *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010)); accord *Hacker*, 459 F.3d at 937 (noting we have declined "to give controlling weight to the treating physician's opinion because the treating physician's notes were inconsistent with her . . . assessment").

It is the opinion of the undersigned that the ALJ correctly discredited the opinion of Dr. Dunn as being the result of a one-time physical exam for which there is no support in the record. As for Dr. Shry's assessment, we do not find that the ALJ outright discredited his opinion. Instead, it appears that the ALJ adopted his appraisal of moderate limitations. Given the Plaintiff's failure to consistently follow-up with mental health treatment, we find no error in this regard. Had her impairments been as severe as alleged, she would have maintained a consistent treatment regimen.

The record does contain a physical RFC assessment completed by a non-examining DHS physician. Plaintiff contends that the ALJ improperly afforded greater weight to this opinion than that of her treating doctors. The weight given to the opinions of non-examining physicians generally depends on the degree to which the overall medical records supports them. 20 C.F.R. § 416.927(d)(3).

After reviewing the Plaintiff's medical records, the non-examining doctor concluded the Plaintiff could perform light work. It is the opinion of the undersigned that the medical records, conservative nature of the Plaintiff's treatment, responsiveness of her impairments to medication, absence of objective medical evidence to document limitations in range of motion and gait, and reported activities all provide substantial support for this RFC assessment. Accordingly, the ALJ was correct in giving the non-examining physician's opinion greater weight than that given the unsupported opinion of a physician who had examined the Plaintiff on one occasion.

### E.  <u>RFC</u>:

Plaintiff also opposes the ALJ's RFC determination.  RFC is the most a person can do despite that person's limitations.  20 C.F.R. § 404.1545(a)(1).  A disability claimant has the burden of establishing his or her RFC.  *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).  "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations."  *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009)*; see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."  *Lauer v. Apfel,*  245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace."  *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003); *see also Jones*, 619 F.3d at 971 (RFC finding must be supported by some medical evidence).

The Plaintiff maintains that the ALJ failed to account for her persistent fatigue; back, knee, and joint pain; weakness, numbness, and pain in her arms and legs; inability to relate to co-workers, deal with the public, deal with work stress, maintain concentration and attention or appearance, behave in an emotionally stable manner, and relate predictably in social situations; and, medication side effects in his RFC determination.  For all of the reasons detailed in sections A-D above, we disagree.  We find that the ALJ's RFC assessment correctly takes into account all of the limitations

that are supported by the record.  And, the ALJ's determination that the Plaintiff could perform light work is sustained by the RFC assessment of a non-treating physician.  Likewise, we find that the ALJ's determination accounts for the Plaintiff's mental limitations associated with her depression/adjustment disorder and anxiety.

The Plaintiff's own reported activities also undermine her contention of disability.  We find it particularly difficult to reconcile her ability to care for her blind and developmentally delayed son, perform household chores, cook, assist her children with homework, handle her finances, shop for groceries and household items, watch television, and visit and interact with friends regularly with her inability to perform any work-related activities.  This also contradicts her contention that she is unable to relate to co-workers, deal with public, deal with work stress, and maintain concentration and attention.  Accordingly, the undersigned finds that the ALJ's RFC assessment should be upheld.

### F.  <u>Step 5 Burden</u>:

Finally, the Plaintiff avers that the ALJ failed to meet his burden at Step 5 of the sequential analysis.  Specifically, it is her argument that the hypothetical questions posed to the vocational expert did not contain all of her limitations, rendering the vocational expert's testimony null and void.  "The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole."  *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006) (quotation and citation omitted).

Here, the ALJ's hypothetical question included all of the Plaintiff's limitations found to exist by the ALJ and set forth in the ALJ's description of the Plaintiff's RFC.  Therefore, based on our previous conclusion, *see supra* Part E, that the ALJ's findings of Plaintiff's RFC are supported

by substantial evidence, we hold that the hypothetical question was therefore proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits.  *Id*.

**IV.**    <u>**Conclusion**</u>**:**

Based on the foregoing, the undersigned recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 14th day of April, 2015.

/s/ *Mark E. Ford*
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE